In this case, the immigration judge granted asylum to Mr. Garung in July 2005. The government appealed, and the board reversed the immigration judge's decision, finding that Mr. Garung had not shown he was persecuted on account of his imputed political opinion or membership in a particular social group. First, I would like to address the errors in the board's analysis with regards to political opinion. In the decision, the board states that a requirement for favorable consideration of his imputed political opinion claim is that Mr. Garung expressed his disapproval or disagreement. The board, first, is incorrect that Mr. Garung did not express his disapproval or agreement with the Maoists when he did not agree to pay their extortion demand when it was first requested. Now, I mean, our basic problem is Elias Zacharias, obviously. And the question is, in what form did he express his disagreement? And we know from the Supreme Court's decision in Elias Zacharias that a mere refusal to pay money is by itself not enough. So there has to be something from which the, here the Maoists, know that he not only doesn't want to pay money, but that it is stemming, at least in part, from his disagreement with their political agenda. What do we have in addition to the refusal to pay the money? I think that this case and the question that you're asking is best guided by the case Dessier v. Ilchert. In that case, this Court found that refusal to pay extortion demands was perceived as disloyal and subversive. The Court noted in that case that what was important was that the persecutors attributed a political opinion to him, that of being subversive, and that they treated him as subversive in persecuting him. In particular in that case, I think it's important that the Court said in the context of Duvalier's Haiti, that case was about someone from Haiti, the refusal to submit to the extortionate demands of the Makhouds could, and in Dessier's case did, constitute a political choice. I believe that the Board's error in this case is because they refused to consider the country conditions evidence. Dessier discusses the role of country that this eligibility for asylum was established in part because of the context of systemic human rights abuses linked to extortion by the Tonton Kamouts under Duvalier. Similarly, in Borja, the case which the Board cited, the Court stated that their conclusion was fueled by an understanding of the context of the refusal to submit to the aggressor's demands. In this case, the immigration judge looked at the context of the case. She considered a report by Amnesty International. The Board did not even address this evidence. They state the record is devoid of evidence, but they don't even look at the country conditions evidence to see what the context was of the statements that Mr. Gurin made. Now, in his testimony in front of the IJ, is it Guru? I don't pronounce the N-G?  In any event, he doesn't say anything beyond saying that he refused to give them money. Am I reading that transcript correctly? He says they asked for money. I did not give them the money, and they got angry. Then they did not do anything at that time, but they said one day we'll give you some trouble. And then the question, what did you think they meant by giving you trouble? I thought that they would beat me, and they would probably try to kill me also. So he But is that just because he wouldn't pay? The question, why did you not pay money, was not asked. And I think that in this case it's very important that the case be analyzed under an imputed political opinion analysis. Part of the confusion, I think, in the board's decision is that they say he didn't establish imputed political opinion because he didn't expressly state his political opinion. Imputed political opinion does not require an express statement. It requires looking to how the persecutor perceived the person who they are persecuting. And I believe the country conditions evidence aptly shows that refusal to pay extortion demands is seen exactly in the same light by the Maoists as refusal as a more overt political statement, such as taking an overt position, political statement against them. They view refusal to support them in that same manner. And Mr. Green's testimony that he thought by not supporting them he would be beaten and killed shows that he understood that he was doing something that was going to place him in harm. Yeah. Boy, this one's tough because the line that the Supreme Court asked us to draw in Elias Zacharias is a very tough line because I think it's a fairly good inference whenever a guerrilla group or a Maoist guerrilla group asks for money from someone who has some money and is, at least in the context of that society, relatively well off. It's a fairly good guess that the person in that society doesn't agree with the guerrillas. And I think that was true in Elias Zacharias. I think that in Elias Zacharias the court found that there was, that he could have given, he could have refused to join the guerrillas for any number of reasons and that there wasn't evidence that he was persecuted because he had an anti-political opinion. I think that is what distinguishes this case because I think the country conditions evidence is so important in this case. The country conditions evidence clearly establishes the how the Maoists view someone who refuses to pay extortion exams. Perhaps that evidence was lacking in Elias Zacharias to show how the guerrillas perceived someone because I think that's the critical question in an imputed political opinion case is how is the person perceived. Is this case different from your ordinary guerrilla case where the guerrillas don't like the administration and they've got various reasons for wanting to depose the tyrant, da da da, but this is a very explicitly communist Maoist insurgent group and therefore we should say communists they impute political opinion to and they persecute because they are wealthy business people or in the context of the society wealthy business people. I mean from the context, from the side of the Maoists, this looks, you know, the classic Maoist is class warfare. Exactly and I don't think that the court needs to merely presume and I think that that evidence is in the record where it states that the Maoists attack businesses and they attack business, NGOs and in that same list people who make overt political statements against them, but I think the fact that the evidence says that business people are attacked by the Maoists I think is very important in this case, yes. Okay we're down to about two minutes. Do we want to hear from the government and then you reserve? Yes, thank you. Okay, thank you. Good morning, your honors. May it please the court, my name is Greg Mack, counsel for the respondent, the Attorney General of the United States. We ask that the court deny the petition for review because the record of this evidence does not compel the conclusion that there's a nexus between the extortion criminal offense here and Mr. Grung's political opinion or his membership in a particular social group. Well, what his opinion is doesn't really matter, it's his imputed political opinion and the motivation of the, I'll stay away from the word persecutor because that's a term of art with a conclusion, the motivation of the Maoists. Overall it is, though, his political opinion and what the Maoists imputed to him. Well, you see, I'm differentiating between his actual opinion and his imputed opinion. Those are often the same thing. But it's a matter of what the Maoists imputed to him. What did they perceive him to believe and did they punish him because of their perception about what he believed? And I think what the Supreme Court and Elias Zacharias says is you can't make that leap from a mere request for money and a mere refusal of money. You can't then, ergo, assume that the reasons are political. The Supreme Court said, and Elias Zacharias, there may be many varieties of reasons why one refuses money and why one requests money. And Elias Zacharias, which his court does have to follow, said you can't make that leap. And certainly on this standard review here, the record doesn't compel you to make that leap in this particular case, Your Honor. And what we're after here is not so much what Mr. Gerung's actual opinion was. We're interested in the motivation of the Maoists. That's correct. So even if he were actually kind of favorable to them, if they thought that he was unfavorable to them on political grounds and they persecuted him because of their opinion imputed to him, that's enough. Even if, you know, he was quite neutral on the question or even favorable, if they thought he was unfavorable and they persecuted him on that ground, that's persecution. Well, and that's not what happened here, Your Honor. I'm just asking as a matter of abstraction. It's possible that the board could grant on that set of facts, they could grant a request for asylum. But again, that's not the case here. It's a matter of what the Maoists perceived and did they punish him for what they perceived him as, what opinion he held. And in this case, this record doesn't indicate anything from Petitioner, whether he had a political opinion, neutral, favorable, anti or otherwise, before this request for money occurred. The focus is really on the motivation of the Maoists. That's correct, Your Honor. So what do we do with the possible argument that because they are communists, they might view this as class warfare and that they just assume that someone who's a business person in that community is politically hostile to them? And I think what Elias Zacharias said is you can't assume just because a political organization has political motives, that has an interest in taking over the country and has an interest in achieving political majority in that country, which I believe the Maoists do now in fact have. You can't just make that leap and say because this organization has political motives that we can always tie their record. But my question is more pointed than that. This is not just a generic guerrilla group. This is a Maoist communist group. And a Maoist communist group will have as part of its ideology a notion of class warfare. Does that make this case different? I think that makes this case different in the sense that they are requesting money. This isn't, there's no indication that this is the hierarchy or the high members of the organization. There seems to be this indication this is a regional group or persons who are just requesting money. This is an extortion offense. This is a crime here. And just because the organization is communist, Maoist, or has political objectives, does not make every request they make to a member of the citizenry, doesn't make it a political request. And what we have here is a mere request and a mere unwillingness to pay the money. There's no indication. And then they beat the daylights out of him to a degree far more than would be necessary simply to get the money. Well, they broke his arm. They sent him letters. This occurred over a two-week period. They sent him a letter. They sent two people in to talk to him. And then they sent about 14 or 15 people in to get the money from him. Right. And if all they were interested in was getting the money, I think the 14 people were enough to say, listen, you go stand in the corner and we'll reach into your wallet. Instead of beating him up and reaching into his wallet. Well, he had refused. And that's what we draw back to. This is an extortion offense. This is a criminal offense. And the asylum statute isn't a garden variety crime prevention statute. Of course, I agree with you. That's what I'm saying. You have to demonstrate that there's some political objective with respect to what happened or what transpired, be it from the Maoist who stated their political opinion or imputed their political opinion or from the victim here, the petitioner here. He stated in advance maybe that he had a political opinion or put up banners next to his home and said, I reject the Maoist political. But he doesn't voice his refusal from a political standpoint until he gets to the United States at the asylum hearing and in his asylum statements before the immigration judge. There's nothing really to indicate that he had any opinion whatsoever. And granted, the focus is upon the Maoists and their interests. But I think what Elia Zacharias says, you can't make that leap that just because a political organization makes an extortionate demand and on the other side a victim refuses that demand, that you can fill the gap, particularly with this court's standard of review that the record has compelled the evidence to the contrary. You can't make that leap, given what Elia Zacharias says. This is the case that is on all fours we would submit. What do we do with the fact that the IJ, who actually had Mr. Groen in front of her, thought that he'd satisfied that burden? Well, this isn't a credibility case. So this is a case on the merits. And the board is the final, ultimately, authority with respect to whether a petitioner or whether an applicant has met his burden of proof. And the IJ is simply wrong with respect to political opinion and the social group termination. That's why we have a board of immigration appeals to make those corrections. But because it is not a credibility case, what's our standard of review? I understand if there's never a credibility finding for us to reverse that. That's a pretty tough thing for us to do. But this is really a question of implications to be drawn as a matter of law, what's in the record and undisputed. From the board's perspective, it is a de novo review on the law, whether the facts meet the law with respect to asylum here. And the board performed its de novo function. This court, however, its standard of review is whether the record of evidence compels a conclusion contrary to the board's conclusion. Even when the facts are undisputed? Even when the facts are undisputed. The board is performing a different role than this court. This court is, of course, a court of review. The board is conducting and using its de novo authority to look at the facts as found by the immigration judge and the law as applied by the immigration judge. And the board here concluded that the law hadn't been met and the immigration judge was wrong and should have been reversed. Now, in the ordinary context, for example, reviewing summary judgment or whatever, you know, we defer to the district court findings of fact and so on. And the district court is insulated in all kinds of ways. But if the facts are undisputed, and the only question is what's the legal significance of the fact, that's a question of law. That's not true here with an administrative agency when the only question is what do these facts mean as a matter of law? And it's particularly not true with respect to the administrative agency. This court sits as a superior court with respect to the inferior district court. And you have control over the district court. But here you're looking at a I wish. But this court looking at the Board of Immigration appeals determination is looking at a separate and coequal branch of government. And that's how Congress has interposed that standard of review that you have to find that the record compels a contrary conclusion. So it's far different than the district court summary judgment context, Your Honors. And in this case, Your Honors, we would submit this is a criminal offense that occurred here, a tragic one, a lamentable one. But under Elias Zacharias and the asylum statute, it is not a garden variety criminal prevention statute. And we ask the court to deny the petition for review. There's no further questions? I think not. Thank you. Thank you, Your Honors. I would just like to point the court to some of the evidence I believe really underpins the finding that the malice persecuted him on account of an imputed political opinion. First of all, I point the court to the State Department report. Okay. Where is that in the record? I'm looking at AR 260. 260. Okay. Hang on. And this talks about extortion, where it says who they extorted money from, from businesses and workers, as well as non-government NGOs. And recrimination was almost always violent. To further put that in context, I point the court to the Human Rights Watch report. Okay. Let me make sure I understand the point. Okay. I'm now reading from the report. Malice regularly extorted money from businesses and workers, as well as NGOs. When individuals or companies refused or were unable to pay, malice recrimination was almost always violent. So that doesn't say that they're only focusing on companies. That is to say, sort of the evil capitalist entity. And it doesn't say only wealthy or business individuals. It just says individuals. That's correct. And I think that the second sentence sort of shows what they did when people didn't pay, that it was violent. But the first sentence, that they extorted from businesses and workers, as well as non-government organizations, I believe shows a capitalistic. But it's a crummy communist that extorts money from the workers. Let me go into the Human Rights Watch report, if I may. At AR-294, this is a summary article of the full report, which states in the middle of the page, the Maoists are, if anything, even more brutal. They target whoever opposes them as class enemies. And then it goes on to list informers, teachers, peaceful political activists, and civilians who refuse to pay extortion or feed them. Finally, I would just like to point the court to the immigration judge's decision, which does find and state that, as a successful businessman, it is reasonable for him to assume the Maoists. Where are you reading from? Oh, I'm sorry. Now, with the immigration judge's decision, I'm at 116, the last paragraph on that page. As a successful businessman, it is reasonable for him to assume the Maoists imputed a capitalist political opinion to him, rather than a pro-communist or pro-Maoist political opinion. The first sentence of that paragraph, respondent stated his political opinion when he was asked to provide money. Now, that's an odd statement on its, if I take it literally, because he didn't state his political opinion, unless the I.J. is saying, in the context, saying I'm not giving you money is a statement of political opinion. I agree with Your Honor on that point. And I believe that reading it as, as you said, in the context, makes sense because she had just recited all of the country conditions evidence, which she carefully considered. Thank you very much. Nice arguments on both sides. Case of Gurung versus Holder is now submitted for decision.
judges: Hug, Reavley, Fletcher W.